UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID LEON DEW,

    Petitioner,

    v.

BEN CURRY, Warden,

    Respondent.

_____/

No. C 07-01818 PJH

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Before the court is the petition for writ of habeas corpus filed by state prisoner, David Leon Dew ("Dew"), pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer, supported by a memorandum of points and authorities, and also provided exhibits for the court. Petitioner filed a traverse along with a memorandum of points and authorities. Having reviewed the parties' papers, the record, and having carefully considered their arguments and the relevant legal authorities, the court hereby DENIES the petition.

## BACKGROUND

**A.    Procedural History**

On April 14, 1983, Dew pled guilty to second degree murder and was sentenced to fifteen years to life in state prison, a term which he continues to serve. Dew originally filed his first habeas petition with the state court on April 17, 1989, claiming that his plea was not knowing and voluntary. See Petitioner's Appendix Exhibit W ("Pet.'s Exh. W") at 1. That petition was denied. *Id.* On April 22, 1997, Dew filed his second habeas petition contending that he should be allowed to withdraw his plea. *Id.* That petition was also denied. *Id.*

Dew's current habeas petition challenges the California Board of Parole Hearings'

("Board") denial of his application for parole following a parole consideration hearing on May 12, 2005. Pet.'s Exh. W at 1. The 2005 parole hearing resulted in Dew's eighth (8th) parole denial. Dew's Petition at 2-3.

Dew filed his most recent state habeas petition in the San Diego County Superior Court, which was denied in a written opinion on June 14, 2006. See Pet.'s Exh. W. Dew proceeded to file a habeas petition with the California Court of Appeal, which was also denied, on November 20, 2006. Pet.'s Exh. X. The California Supreme Court denied Dew's subsequent petition for review on February 7, 2007. Pet.'s Exh. Y.

On March 30, 2007, Dew filed the current federal habeas petition.

## B. Factual History

Dew's conviction stems from the following facts, a more complete version of which may be found in the Board's Parole Consideration Hearing transcript from May 12, 2005. See Respondent's Exhibit 2 ("Resp. Exh. 2"). On November 25, 1982, Dew and other co-conspirators showed up at victim Claude County's apartment. Resp. Exh. 2 at 16. One of Dew's co-conspirators, Roy Patton, was a former roommate and homosexual partner of Mr. County. *Id.* at 18. In his plea, Dew stated that the plan was for Mr. Patton to occupy Mr. County while Dew and the other co-conspirators burglarized Mr. County's residence. *Id.* at 19.

Mr. County got into a verbal confrontation with Mr. Patton that escalated into a fight. *Id.* Dew claims at this point that he was frightened, so he fled the apartment and waited in the van. *Id.* Dew indicates that his co-conspirators exited the apartment a short time thereafter carrying the victim's property. *Id.* Dew claimed that he did not know of the victim's death until the following day. *Id.*[1]

The San Diego Police Department responded to a radio call at the victim's residence and found Mr. County dead in his apartment, lying face down, his hands and ankles tied

---

[1] The Board relied on the statement of facts from its September 2004 Board Report. Resp. Exh. 2 at 16. However, the factual background is somewhat muddled because Patton had originally implicated Dew, claiming Dew brought the rope and held the victim down during the murder. *Id.* at 56-57. Patton later retracted that statement, admitting that he had lied. *Id.*

2

behind his back and his pants pulled down below his waist. Resp. Exh. 2 at 19. There were bloodstains all over the room, including on parts of a trophy, a knife, and a stick. *Id.* According to the autopsy report, Mr. County died from cardio-respiratory failure due to head injury. *Id.*

**C.     State Court Decisions**

    **1.     Parole Board**

At Dew's parole hearing on May 12, 2005, the Board questioned Dew about both his acts prior to being imprisoned, and his acts during his prison term. The Board went through Dew's prior criminal acts which included: (1) 1970 - possession of stolen property (acquitted); (2) 1975 - offense against property; (3) 1978 - aggravated assault with a weapon during a felony; (4) 1980 - false imprisonment and battery on a person; and (5) 1981- pimping. *Id.* at 20-23. The Board provided Dew an opportunity to explain the circumstances surrounding some of these offenses. *Id.*

The Board then proceeded to review and consider Dew's family history. *Id.* at 25-33. According to the Board report, Dew's family was unhealthy, dysfunctional, and severely abusive. *Id.* at 31. When he was young, Dew had an undiagnosed learning disability and his father beat him when he performed poorly in school. *Id.* at 31-33. Dew has three children of his own, including two sons with whom he has a good relationship and a daughter with whom he recently reconciled. *Id.* at 26-27. Dew has been married twice, but is currently divorced. *Id.* at 27-29.

Subsequently, the Board examined Dew's post-conviction activity. Dew received many positive reports for the different jobs he performed while serving his term. *Id.* at 35-38. Dew was awarded a Certificate of Completion in Vocational Graphic Arts from Atascadero State Hospital in 1989 and received his General Education Development ("GED") certificate in 1990. *Id.* at 35-38, 40. Dew participated in Alcoholic's Anonymous ("AA") throughout different points of his prison term. *Id.* at 35-38. Dew spent three years of his term at Atascadero State Hospital in psychotherapy, but did not participate in therapy during his most recent years of imprisonment. *Id.* at 35-38.

In its decision to deny parole, the Board pointed to several factors. Resp. Exh. 2 at 99-105. First, the Board pointed out the brutality of Dew's commitment offense in relation to the trivial nature of the motivated crime (burglary). *Id.* at 100.

Second, the Board referred to Dew's psychiatric reports. *Id.* at 101. Although Dew received a positive report in his most recent psychiatric evaluation in 2003, the Board remained concerned about the problems Dew had when he first entered the institution. *Id.* The Board did not have any reports that demonstrated Dew's resolution of his initial psychiatric problems when he began his term, including hearing voices and a lifelong hostility towards women. *Id.* The Board requested that Dew obtain a new psychiatric report addressing these specific issues prior to his next parole hearing. *Id.* at 101, 105.

In addition, the Board cited Dew's parole plans as being insufficiently specific, including: his proposed place to live; place to work; and a place to follow up with substance abuse treatment. *Id.* Dew did provide two different options that he had for places to live, but he was unable to establish a residence as to either option until after his release. *Id.* at 67, 72-74.

The Board commended Dew for being disciplinary-free since 1998, and for receiving several positive reports for good work completed while incarcerated. *Id.* at 103-104. The Board did not, however, consider his behavior to be sufficient to outweigh the "especially cruel manner" of his crime. *Id.* at 104. The Board denied Dew's parole with the next hearing to take place after three (3) years. *Id.*

### 2.  San Diego County Superior Court

The San Diego County Superior Court denied Dew's habeas petition on June 14, 2006. Pet.'s Exh. W at 10. Dew petitioned the court based solely on his May 12, 2005 parole denial. *Id.* at 1. The court reasoned that Dew failed to meet his burden of proof. *Id.* at 2. The court cited California Penal Code § 3041 that provides that when the Board considers an inmate's <u>suitability</u>, the Board "shall set a release date unless it determines that . . . the timing and gravity of a current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for

4

1  this individual." Pet.'s Exh. W at 2; Cal. Penal Code § 3041(b).

2  The court reasoned that according to the California Code of Regulations, it may use all relevant information available to determine a prisoner's suitability for release. Pet.'s Exh. W at 3-4. The Code of Regulations includes a list of general factors that tend to show suitability and unsuitability for parole when weighed and balanced. *Id.* The list of factors demonstrating unsuitability for parole included the following: motive, level of abuse and other circumstances of the commitment offense; previous record of violence; unstable social history; sadistic sexual offenses; psychological factors; and institutional behavior. 15 Cal. Code Regs. § 2402(c). Factors showing suitability include: lack of juvenile record; stable social history; signs of remorse; motivation for crime; lack of criminal history; age; future plans; and institutional behavior. 15 Cal. Code Regs. § 2402(d). The Board is afforded great deference in how it chooses to weigh the factors. Pet. Exh. W at 4. The overriding factor for the Board determining a prisoner's suitability for parole is the risk he poses to public safety. Cal. Penal Code § 3041; *In re Dannenberg,* 34 Cal. 4th 1061, 1084 (2005).

The court reviewed the Board's decision regarding Dew's unsuitability for parole for "some evidence." Pet. Exh. W at 5; *In re Rosenkrantz*, 29 Cal. 4th 616, 677 (2002). It noted that the factual basis for the Board's decision had to be supported by some evidence with some indicia of reliability. *In re Rosenkrantz*, 29 Cal. 4th at 677. It is within the Board's discretion to give different weight to each suitability factor and in how it chooses to resolve conflicts in evidence. *Id.* at 656, 677.

The court found that there *was* some evidence to support the Board's decision. Pet.'s Exh. W at 5-7. The court reasoned that the Board's balancing of the suitability and unsuitability factors was sufficient to satisfy the some evidence standard. *Id.*

The court rejected Dew's contention that the Board denied his liberty interest in parole by relying solely on the unchanging facts of his commitment offense. *Id.* at 5. The decision to deny parole can be based on the prisoner's underlying offense, so long as the parole board considers all applicable factors regarding suitability for parole. *In re*

*Rosenkrantz,* 29 Cal. 4th at 677, 682-683.

In addition, the court denied Dew's remaining claims, including that the Board erred by considering the underlying facts as more serious than stipulated at plea; that a preponderance of the evidence standard of review should have applied; that the Board's failure to provide uniform terms for offenses of similar gravity was an abuse of discretion; that the Supreme Court's interpretation of the legislature's actions in *Dannenberg* and *Rosenkrantz* was unconstitutional; and that the Board's practice of denying parole to indeterminate prisoners violates due process. Pet.'s Exh. W at 7-10.

### 3.  State Appellate Court Decisions

The California Court of Appeals denied Dew's petition on November 20, 2006. Pet.'s Exh. X at 1. The court found that, while the Board could not automatically exclude individuals from parole based on a certain type of offense, it could weigh the degree of violence used and the amount of viciousness shown by the defendant. *Id.* at 1-2. In addition, the court referred to Dew's plea agreement and the fact that Dew was not promised parole under the plea agreement. *Id.* Dew acknowledged the possibility of spending the rest of his life in prison under the plea agreement. *Id.* The appellate court affirmed that the superior court was correct in following the law declared by the California Supreme Court. *Id.*

The California Supreme Court denied Dew's petition for review. Pet.'s Exh. V.

**ISSUES**

Dew raises many issues in his habeas petition, several of which are actually duplicative of others. Review of the briefs demonstrates that Dew is essentially raising the following three claims:

1)  that the state court's decision to uphold the Board's denial of parole was not supported by sufficient evidence and was an unreasonable application of clearly established United States Supreme Court law;

2)  that the unsuitability criteria the Board relied on to find him unsuitable for parole are unconstitutionally vague; and

6

3)       that the Board violated the terms of his plea agreement by failing to set his parole date.

## STANDARD OF REVIEW

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to this petition since it was filed after the Act's effective date. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court authority, and satisfies the requirements of 28 U.S.C. § 2254(d)(1) if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams(Terry) v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court decision is an "unreasonable application" of Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court, on habeas review, may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. The court must instead determine it was objectively unreasonable to support granting a writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537

7

U.S. 322, 340 (2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1007 (9th Cir. 2000). Section 2254(d) applies to a state prisoner's habeas petition challenging the denial of parole. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1126-1167 (9th Cir. 2006).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion[2] to ensure that the state courts decided the case on the merits. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-806 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000). A federal court in a habeas case should apply the following presumption: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803.

## DISCUSSION

**I.      Clearly Established Federal Law - "Some Evidence" Standard**

Dew challenges the Board's decision finding him unsuitable for parole. There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). However, if a state's statutory parole scheme uses mandatory language, it may create a presumption that parole release will be granted when or unless certain designated findings are made, thereby giving rise to a constitutionally protected liberty interest. *See Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987). In such a case, a prisoner has a legitimate expectation in parole that cannot be denied without adequate procedural due process protections. *Id.* at 373-381; *Greenholtz,* 442 U.S. at 11-16.

California's parole scheme uses mandatory language and is largely parallel to the schemes found in *Allen* and *Greenholtz,* giving rise to a protected liberty interest in release on parole. *Allen*, 482 U.S. at 373-381; *Greenholtz*, 442 U.S. at 11-16; Cal. Penal Code § 3041(b). Pursuant to California Penal Code § 3041(b), the Board will set a release date

---

[2]The California Court of Appeals' denial of Dew's state habeas petition was the highest state court opinion of this case.

8

unless it determines that the gravity of the current convicted offense, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the *public safety* requires a more lengthy period of incarceration for the individual. Cal. Penal Code § 3041(b). If that is the case, a parole date cannot be fixed at that meeting. *Id.* The Ninth Circuit has held that California's parole scheme creates a presumption that parole release will be granted unless the statutorily defined determinations are made. *McQuillion v. Duncan*, 306 F. 3d 895, 902 (9th Cir. 2002).

The United States Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." *Irons v. Casey*, 479 F.3d 658, 662 (9th Cir. 2002) (adopting "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)); *see McQuillion*, 306 F.3d at 904 (same); *Sass*, 461 F.3d at 1129 (recognizing "some evidence" standard is required to uphold Board's decision, but denying petition where Board's reliance on gravity of offenses in combination with prior offenses was sufficient); *Biggs v. Terhune*, 334 F.3d 910, 915-17 (9th Cir. 2003) (finding several grounds for denial of parole release date lacked evidentiary support, but denying habeas relief because three other grounds were supported by some evidence). The "some evidence" standard identified in *Hill* is clearly-established federal law in the parole context for AEDPA purposes. *Sass*, 461 F.3d at 1128-29.

In addition, the evidence underlying the Board's decision must have some "indicia of reliability." *McQuillion*, 306 F.3d at 904; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). A relevant factor in determining whether the evidence underlying the Board's decision has some indicia of reliability is whether the prisoner was afforded an opportunity to appear before, and present evidence to the Board. *See Pedro v. Oregon Parole Bd.*, 825 F.2d 1396, 1399 (9th Cir. 1987). Accordingly, if the Board's determination of parole suitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005); *McQuillion*, 306 F.3d at 904.

9

When assessing whether the Board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. *Irons*, 479 at 662. Accordingly, in California, the court must first look to California law to evaluate the findings necessary to deem a prisoner unsuitable for parole. Then, the court must review the record in order to determine whether the state court's determination that the Board's decision was supported by "some evidence," itself constituted an unreasonable application of the "some evidence" principle articulated in *Hill*. *Id.*

Determining whether the "some evidence" standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. The "some evidence" standard is minimally stringent, such that a decision will be upheld if there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Powell v. Gomez*, 33 F.3d 39 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-456). The main purpose of this standard is to ensure that the Board's findings were not "without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

The Ninth Circuit has recently focused on the Board's reliance on the circumstances surrounding the commitment offense as the sole grounds for denying parole. In *Biggs,* the court reasoned that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." *Biggs*, 334 F.3d at 916-917. In *Biggs* however, the Ninth Circuit *did* uphold the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration. *Id.* at 917.[3]

The Ninth Circuit's subsequent decision in *Sass* questioned its prior decision in

---

[3] The court cautioned that if "Biggs continue[d] to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole." *Biggs*, 334 F.3d at 917; *Rosas*, 428 F.3d at 1232.

10

*Biggs.*  The court noted specifically that, "[u]nder AEDPA it is not our function to speculate about how future parole hearings could proceed."  *Sass*, 461 F.3d at 1129 (determining that it is not a due process violation for the Board to determine parole suitability based solely on the immutable circumstances of the commitment offense).  Even more recently, in *Irons*, the Ninth Circuit reiterated its reasoning in *Biggs*, stressing the court's desire that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes."  *Irons*, 479 F.3d at 665.  However, despite the Ninth Circuit's intimations that parole denial based solely on the commitment offense <u>could</u> result in a due process violation, it has not created a standard to enable the trial courts to identify such a violation.

### A.  Parole Board's Weighing of Unsuitability Factors

Dew argues that a "preponderance of the evidence" standard should apply to this court's review of the Board's decision, as opposed to the "some evidence" standard relied on by the state courts.  It is clearly established federal law that the requirements of due process are satisfied so long as <u>some evidence</u> supports the decisions made by the Board.  *Hill*, 472 U.S. at 454.  "This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced."  *Id.* (citing *United States ex re. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927)).  Thus, the relevant issue is whether there is any evidence in the record that could support the decision of the Board in denying Dew's parole.  *Id.*

#### 1.  Parole Board Factors Satisfying "Some Evidence" Standard

The Board considered several factors, including the circumstances of Dew's commitment offense, in determining that he still posed an unreasonable risk of danger to society or a threat to public safety if released, thus making him unsuitable for parole.  It is not the duty of this court to re-weigh the unsuitability factors weighed by the Board.  Instead, the court is limited to determining whether there was some evidence to support the

1  Board's decision.

### a. Commitment Offense

Dew claims that his right to due process was violated because he was denied parole based on the unchanging facts of his commitment offense. The Board may consider the gravity of the commitment offense in assessing an inmate's suitability for parole. Cal. Penal Code § 3041(b). The circumstances of the commitment offense may support unsuitability for parole if the "prisoner committed the offense in an especially heinous, atrocious, or cruel manner." 15 Cal. Code of Regs. § 2402(c)(1).

The Board reflected on the circumstances surrounding Dew's commitment offense, including the fact that the victim was tied up, beaten, and abused in a manner that demonstrated "complete disregard for human suffering." Resp. Exh. 2 at 99. The Board described the circumstances surrounding the crime as being "extremely cruel" and "very callous." *Id.* The Board also recognized that while it might not have been Dew's and his co-conspirators' plan to kill the victim, the crime *was* calculated and pre-planned to remove the victim's property, during commission of which, the victim was killed. *Id.* Therefore, the Board was correct in recognizing that the motive for the crime was very trivial in relation to the offense. 15 Cal. Code of Regs. § 2402(c)(1)(E).

The Board is free to consider the circumstances surrounding the commitment offense as one of several unsuitability factors. 15 Cal. Code of Regs. § 2402(c)(1). Dew argues that it is error for the Board to consider his acts to be "exceptionally callous" and "cruel" because he was not even present during the murder. Dew's Points and Authorities ("DP&A's") at 52. The difficulty for Dew is that he pled guilty to Second Degree Murder for his participation in the offense, an offense which was itself was "exceptionally callous" and "cruel."[4]

---

[4] This is a difficult question because of the lack of clarity in the record. Dew claims that he was not involved in the actual beating and murder of the victim; however one of his co-conspirators (Patton) testified that Dew brought the rope and the knife used to bind and kill the victim. Resp. Exh. 2 at 56-57. He also claimed that Dew handed him the knife and told him to "finish it." *Id.* at 57. Dew claimed that Patton later changed his story while in prison, stating that he lied about Dew's involvement and that Dew had left before the murder as he said. The

Dew's circumstances closely parallel the prisoner's situation in *Biggs*. In *Biggs'*, the petitioner did not commit the murder himself, but was "intertwined with the conspiracy from the very beginning." *Biggs*, 334 F.3d at 916. Like Dew, Biggs also had a positive record of behavior while in prison and a record of vocational and educational achievements. *Id.* The court does note however, that Biggs was serving a sentence of 25 years to life and the case constituted his first parole denial, unlike Dew, who is contesting his eighth denial. *Id.*

Like Biggs, Dew's participation, in whatever role, in the commitment offense makes him "intertwined with the conspiracy." *Id.* As a result, Dew was forced to deal with the consequences of his participation and with the "atrocious" results of the crime. *Id.* The Board properly relied on Dew's commitment offense as a central factor weighing in support of unsuitability for parole.

### 2. Additional Unsuitability Factors

In addition to the circumstances of the commitment offense, the Board may use a number of general factors when weighing a prisoner's suitability for parole. 15 Cal. Code Regs. § 2402(c)-(d). The weight given to each factor and the way the factors are balanced is within the Board's broad discretion, but a decision to deny parole cannot be arbitrary or capricious. *In re Rosenkrantz*, 29 Cal. 4th at 656-657, 677. Other unsuitability factors the Board may consider include: the defendant's prior record of violence; psychological factors; unstable social history; and institutional behavior. 15 Cal. Code Regs. § 2402(c). The Board may rely on some of the unsuitability factors more than others, but the some evidence standard is minimal and does not require overwhelming evidence in support of the Board's decision. *Hill*, 445 U.S. at 454. The factors are discussed below.

#### a. Prior History of Violence

Here, the Board considered Dew's prior violent criminal offenses as an unsuitability factor in denying his parole. 15 Cal. Code Regs. § 2402(c)(2). In the Board's decision, it cited Dew's prior arrests for battery on a person in 1980, pimping in 1981, and attempted

---

bottom line, however, is that Dew pled guilty to second degree murder.

13

burglary. Resp. Exh. 2 at 100-101.

Dew attempted to explain the 1980 battery and false imprisonment offense by claiming that he was protecting the female victim from an abusive boyfriend who showed up at his residence. *Id.* at 22.

To Dew's credit, he has not committed any violent acts during his 24 years in prison and his other priors, aside from the battery charge in 1980, were minor, non-violent offenses. *Id.* at 22, 25. While the Board cited Dew's history of violent crimes as a factor supporting parole unsuitability, the weight accorded this factor could not have been significant, given the age and relatively minor nature of that history. However, it is important to note that this was just one of several suitability factors the Board considered. Even though Dew's prior history of violence, taken alone, may not have substantially supported a finding of unsuitability, it could have contributed to such a finding. 15 Cal. Code Regs. § 2402(b).

### b.     Psychological Factors

Another unsuitability factor the Board considered included Dew's psychological reports. The Board is permitted to look at a prisoner's history of mental problems as a factor weighing in favor of an unsuitability finding. 15 Cal. Code Regs. § 2402(b). Dew spent three years of his prison term at Atascadero State Hospital, where the physicians identified Dew's prior history of hearing voices and hostility towards women. Resp. Exh. 2 at 102.

In 2003, Dr. Gamard evaluated Dew, which resulted in a positive report. *Id.* The Board found this report supportive of release, but the Board was concerned because Dr. Gamard's report did not specifically address Dew's issues identified at Atascadero State Hospital. *Id.* In its decision denying parole, the Board requested a new psychiatric report for Dew's next parole hearing, specifically identifying and evaluating his past problems with hearing voices and his lifelong hostility towards women. *Id.*

Although the Board acknowledged Dr. Gamard's report as a factor weighing in favor of Dew's release, the court finds that the Board's concerns about Dew's potentially

14

unresolved psychological issues from earlier in his prison term were legitimate. Because the purpose of parole is to determine whether or not the prisoner poses a present risk to society, the Board properly determined that Dew's failure to demonstrate having overcome previously diagnosed psychiatric problems weighed in favor of an unsuitability finding. Resp. Exh. 2 at 102.

### c.    Unstable Social History

Dew claims that the Board misinterpreted the unsuitability criteria to require an unstable social history generally, when unsuitability criteria should only apply where a prisoner has "a history of unstable or tumultuous relationships with others." Traverse Points & Authorities ("TravP's&A's") at 12. Furthermore, Dew interprets unstable or tumultuous relationships with others as addressing only Dew's contribution to the relationship. *Id.* Dew reads the California Code of Regulations too narrowly. The Board can properly consider Dew's past and present relationships as a factor in determining unsuitability for parole. 15 Cal. Code Regs. § 2402(b).

The Board cites to Dew's "history of unstable relationships with others" and rough childhood during which his father abused him. Resp. Exh. 2 at 101. Dew's father abused him because he received poor grades due to his undiagnosed learning disabilities. *Id.* Dew argues that the abuse inflicted by his father is completely beyond his control, does not demonstrate his social instability, and should not have been considered by the Board. TravP's&A's at 12. The Board is allowed, however, to consider possible *effects* that Dew's past relationships had on his past and current relationships.

Additionally, the Board considered that Dew used alcohol, LSD, marijuana and cocaine, in addition to indicating his preference for "being a street person." Resp. Exh. 2 at 101. Dew also gave one child (his daughter) up for adoption. *Id.* Dew has since reconciled with his daughter while in prison, which the Board indicated was "favorable." *Id.*

The Board also cited Dew's history of hatred towards women and how that manifested itself in his arrest for pimping. *Id.* at 101-102. This is another reason the Board requested a more specific psychiatric work-up from Dew.

Without question, Dew had a tragic upbringing during which his father abused him, and he lived in an all around "unhealthy, dysfunctional, and severely abusive" family environment. Resp. Exh. 2 at 31. Contrary to Dew's argument, the Board did not judge his social relationships based solely on factors outside his control. Instead, it looked at later relationships and potential residual effects that his upbringing may have had on those relationships. The Board did take into account the positive strides he made by reconciling with his daughter and participating in AA and NA Substance Abuse Programs. Overall, however, the Board's decision that Dew's social history was a factor weighing in support of his unsuitability was supported by some evidence in the record.

### d. Institutional Behavior

Another factor the Board can consider to support a finding of unsuitability for parole is any misconduct by the prisoner while serving his prison term. 15 Cal. Code Regs. § 2402(b). The Board pointed to Dew's lack of participation in institutional programs in more recent years and the fact that he has not participated in his vocational training since the late 1980's. Resp. Exh. 2 at 101. The Board also took into account Dew's history of minor and more serious disciplinary actions while incarcerated, including nine 128(a) "counseling chronos" and six 115 "disciplinaries." *Id.* at 101.[5] The Board did recognize and commend Dew for the fact that he had remained disciplinary-free since 1998. *Id.* at 101-102.

In addition to commending Dew for being disciplinary-free since 1998, the Board also noted that none of his prior disciplinaries were violent or involved drugs or alcohol abuse. *Id.* at 102-103. The Board also cited Dew's good work in a number of different jobs while incarcerated. It specifically pointed to the fact that Dew had participated in AA and NA Substance Abuse Programs in addition to completing educational and vocational courses. *Id.*

---

[5] The 128 "counseling chronos" were citations for being late to work and the 115 "disciplinaries" were all nonviolent and did not involve weapons. Resp. Exh. 2 at 49; Pet.'s Exh. W at 6.

16

Nevertheless, the Board concluded that consideration of both Dew's positive and negative institutional behavior over the duration of his term supported a determination that he was unsuitable for parole. Due to Dew's lack of serious discipline for any type of violent infractions and his commended behavior over the last several years, this factor should not have weighed heavily in support of denying Dew's parole. However, even if some grounds lack evidentiary support, the Board's decision would still be upheld if other grounds were supported by some evidence. *Biggs*, 334 F.3d at 915-917.

### e.    Conclusion

The Board's decision to deny parole was on the whole, quite balanced. The Board recognized several significant positive factors, while not unduly emphasizing several negative factors. The Board's decision was supported by the factors discussed above, including the nature of Dew's commitment offense, his social history, his institutional behavior, and his unresolved psychiatric issues. Although the Board's evidence for some of the enumerated factors was not overwhelmingly convincing, the evidence supporting the commitment offense, social history and psychiatric issues provided some evidence to support the Board's decision. *Id.*

Dew argues that following *Biggs*, the Board's reliance solely on his commitment offense violated his due process rights. *Id.* at 917. Because of the factual similarity between this case and *Biggs,* combined with the fact that this is Dew's eighth denial, it is arguable that Dew's circumstances present a set of facts that could fit into the due process door left open by the Ninth Circuit. *Id.* The Ninth Circuit stated in *Biggs* that, "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." *Id.* Therefore, although the court upheld the parole denial in *Biggs*, the court recognized that a set of circumstances similar to those in *Biggs*, but demonstrating repeated reliance based solely on the commitment offense despite evidence of rehabilitation, could amount to a due process violation.

Here, the Board *did* provide supplemental unsuitability factors, in addition to its

17

consideration of the commitment offense, that offered some additional supporting evidence for the decision to deny Dew's parole. Because the Board's decision is due a great deal of deference, the evidence it provided was sufficient to deny Dew's parole without violating his right to due process. Thus, there was no constitutional violation and the state courts' rejection of Dew's claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court law.

**II.     Unsuitability Criteria are Not Unconstitutionally Vague**

Dew argues that the regulatory language used by the Board to determine that he was unsuitable for parole was unconstitutionally vague as applied to him. Dew primarily challenges the regulation set forth in title 15 section 2402(c)(1) of the California Code of Regulations, which the Board uses to determine whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." 15 Cal. Code Regs. § 2402(c)(1).

The "Commitment Offense" unsuitability factor includes five further sub-factors which help to clarify the "heinous, atrocious, and cruel" language of the commitment offense factor. *Id.* The sub-factors are as follows:

(A) whether multiple victims were attacked;

(B) whether the offense was carried out in a dispassionate and calculated manner;

(C) whether the victim was abused, defiled or mutilated during the offense;

(D) whether the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human life;

(E) whether the motive for the crime is very trivial in relation to the offense.

15 Cal. Code Regs. § 2402(c)(1)(A)-(E). Dew claims that these sub-definitions provide little guidance because they, too, are too general and do nothing to clarify the "heinous, atrocious, or cruel" language. TravP's&A's at 18.

In *Arave v. Creech*, the United States Supreme Court considered an Idaho death penalty statute in evaluating whether the Idaho Supreme Court's adoption of a limiting construction, with regards to the statutory phrase "utter disregard for human life," rendered

the statute unconstitutionally vague. 507 U.S. 463, 471 (1993). The Court held that the language of the statute would not be unconstitutionally vague unless it was "too vague to provide any guidance." *Id.* The *Arave* Court concluded that the aggravating factor of "utter disregard for human life" was not unconstitutionally vague because one of its clarifying sub-definitions was sufficient to clarify the language of the statute. *Id.* at 471-474.[6] Given this, the California regulation's five sub-definitions, which together clarify the seriousness of the commitment offense for parole purposes, provide sufficient clarity as to what specific factors the Board is permitted to rely on to support its decision.

In addition, the Board's application of the sub-factors in this case should be more than adequate to satisfy any vagueness concerns. The Board considered all the evidence surrounding Dew's offense and found that factors (B) through (E) all applied to his case. 15 Cal. Code Regs. § 2402(c)(1)(A)-(E). The Board explained that the crime was pre-planned, the victim was both abused and mutilated during the "brutal" offense, the manner of the offense showed a callous disregard for human life, and that the motive was trivial in relation to the offense. Resp. Exh. 2 at 102-103.

Dew fails to provide any authority holding or even intimating that the language in the regulation is unconstitutionally vague. Applying *Arave*, the sub-factors clarifying the language of the commitment offense provide more than the "some guidance" necessary. *Arave*, 507 U.S. at 471. The unsuitability criteria are not unconstitutionally vague, and the Board's application of the factors provided sufficient explanation regarding how they applied to the facts of Dew's case.

**III.    Breach of Plea Agreement**

Dew also argues that the Board violated his plea agreement by not setting his parole release date. Dew claims that he pled guilty to second degree murder, accepting the consequences, but also entitling him to the benefits of the lesser offense (as opposed to

---

[6] The Court found the following limiting construction was sufficient to meet constitutional requirements: "[A]cts or circumstances surrounding the crime which exhibit the highest, the utmost, callous disregard for human life, i.e., the cold-blooded pitiless slayer." *Arave*, 507 U.S. at 468, 471.

19

first degree murder). DP's&A's at 23. Dew asserts that the plea agreement he entered was a binding contract, and that he was denied the "reciprocal benefit" of the contract by being denied parole. *Id.* at 21.

A criminal defendant has a due process right to enforce the terms of a plea agreement. *Santobello v. New York*, 404 U.S. 257, 261-262 (1971). To determine whether a plea agreement was breached, the court must look to what the parties reasonably understood to be the terms of the agreement. *Buckley v. Terhune,* 441 F.3d 688, 696-697 (9th Cir. 2006).

In the agreement, Dew acknowledged that he could spend the rest of his life in prison. Resp. Exh. 2 at 56. Dew received a fifteen year to life sentence, not a fifteen-year fixed sentence. The reciprocal benefit of the agreement was that Dew received an earlier opportunity for parole than he would have had if he had convicted of a greater offense (i.e., first degree murder). The opportunity for an earlier parole hearing was not a guarantee that parole would be granted. Dew received the benefit of earlier parole consideration and that was all he was entitled to under the agreement. The Board did not breach the terms of the agreement, and there was no constitutional violation. Thus, the state courts' rejection of petitioner's claim was not contrary to, nor an unreasonable application of, clearly established United States Supreme Court authority.

## CONCLUSION

For the reasons set forth above, Dew's petition for a writ of habeas corpus is DENIED.

**IT IS SO ORDERED.**

Dated: October 26, 2007

PHYLLIS J. HAMILTON
United States District Judge

20